**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

PETER GREGORY MORRIS,
*Defendant-Appellant*.

No. 12-50302

D.C. No.
5:11-cr-00090-VAP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
January 8, 2014—Pasadena, California

Filed March 13, 2014

Before: Alex Kozinski, Chief Judge, and Stephen Reinhardt
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Reinhardt

## SUMMARY[*]

### Criminal Law

The panel affirmed a sentence in a mortgage fraud case in which the defendant contended that the district court erred in calculating the banks' loss under the Sentencing Guidelines.

The panel held that, in a mortgage fraud case, loss under U.S.S.G. § 2B1.1(b) is calculated in two steps. The first step is to calculate the greater of actual or intended loss, where actual loss is the reasonably foreseeable pecuniary harm from the fraud, which will almost always be the entire value of the principal of the loan. The second step is to apply the "credits against loss" provision and deduct from the initial measure of loss any amount recovered or recoverable by the creditor from the sale of the collateral, whether or not the value of the collateral was foreseeable.

### COUNSEL

Sean K. Kennedy, Federal Public Defender, and Michael Tanaka (argued), Deputy Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

André Birotte Jr., United States Attorney, Antoine F. Raphael and Joseph B. Widman (argued), Assistant United States Attorneys, Riverside, California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

REINHARDT, Circuit Judge:

In 2007, Peter Morris applied for three loans from three financial institutions (Washington Mutual, Lehman Brothers, and Bank of America) to purchase three properties, all located at "Sonic Court" in Riverside, California. In the loan applications, Morris claimed securities and assets that he did not own, employment he did not have, and income he did not earn. He falsely stated that he was unmarried, was in the process of selling a different house, and was not obligated to pay child support. He supplied the three banks with false documents to substantiate these false statements. He also withheld information—for example, he did not tell any of the banks that he was applying for loans from the other two. All three banks approved Morris's loan applications, and Morris purchased the three properties shortly afterward. When Morris made only one mortgage payment, two of the three banks foreclosed on their loans and sold the properties at a loss. Morris sold the remaining property in a short sale, at a loss to the third bank.

In 2011, in connection with these fraudulently obtained loans, Morris pleaded guilty to wire fraud, 18 U.S.C. § 1343, and making a false statement on a loan application, 18 U.S.C. § 1014. The district court sentenced Morris to 63 months imprisonment. In choosing this sentence, the district court began with a Sentencing Guidelines range of 57 to 71 months, which reflected a 16-level increase to Morris's base offense level based on the district court's calculation that the banks had suffered a loss of $1,033,500. A lesser loss would have resulted in a lower Guideline range. Morris appeals his sentence.

## I.

Morris contends that the district court erred in calculating the banks' loss under the Sentencing Guidelines. Morris's Guideline sentencing range was calculated using U.S.S.G. § 2B1.1, which applies to offenses involving fraud or deceit. Under § 2B1.1, a defendant's base offense level is increased according to the amount of loss caused by the offense, where the initial measure of "loss" is the greater of actual or intended loss. U.S.S.G. § 2B1.1(b)(1); *id.* cmt. n.3(A). Because Morris does not make any argument as to what he "intended" the banks to lose, actual loss is the appropriate initial measure here. "Actual loss" is "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* cmt. n.3(A)(i). "Reasonably foreseeable pecuniary harm" means "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* cmt. n.3(A)(iv). Relying on this "reasonably foreseeable" language, Morris argues that the district court should have calculated loss as the value of the loans less the reasonably foreseeable value of the properties at the time the loans were obtained. He contends further that the reasonably foreseeable value at the time the loans were obtained was considerably greater than the actual value of the properties at the time they were sold because the drastic housing market downturn of 2008–2009 was not foreseeable.

The difficulty with Morris's argument is that the Sentencing Guidelines explicitly dictate how to measure loss in mortgage fraud cases that involve collateral. In such cases, the "credits against loss" provision mandates that the initial measure of loss (actual or intended loss) be reduced by "the amount the victim has recovered at the time of sentencing

from disposition of the collateral" or, if the collateral has not been disposed of at that time, the fair market value of the collateral as of the date of conviction. *Id.* cmt. n.3(E)(ii)–(iii). Morris's proposal for calculating loss conflicts with this provision.

We adopt the two-step approach first articulated by the Eastern District of Virginia, and subsequently adopted by the Second, Sixth, and Tenth Circuits. In calculating loss in mortgage fraud cases, these Circuits hold that the first step is to calculate the greater of actual or intended loss, where actual loss is the reasonably foreseeable pecuniary harm from the fraud. This amount will almost always be the entire value of the principal of the loan, as it is reasonably foreseeable to an unqualified borrower that the entire amount of a fraudulently obtained loan may be lost. The second step is to apply the "credits against loss" provision and deduct from the initial measure of loss any amount recovered or recoverable by the creditor from the sale of the collateral. This second calculation is made without any consideration of reasonable foreseeability. *See United States v. Crowe*, 735 F.3d 1229, 1236–41 (10th Cir. 2013); *United States v. Wendlandt*, 714 F.3d 388, 393–94 (6th Cir. 2013); *United States v. Turk*, 626 F.3d 743, 748–51 (2d Cir. 2010); *United States v. Mallory*, 709 F. Supp. 2d 455, 457–60 (E.D. Va. 2010), aff'd., 461 Fed. Appx. 352, 361 (4th Cir. 2012) (unpublished).[1] The resulting amount is the final loss amount.

---

[1] In so holding, we join the Second Circuit in rejecting the only case to the contrary, *United States v. Parish*, 565 F.3d 528, 535 (8th Cir. 2009). We agree with the Second Circuit that the Eighth Circuit's reasoning in *Parish* is contrary to the plain language of the Sentencing Guidelines because "it conflates the initial calculation of loss (where foreseeability is a consideration) with the credits against loss available at sentencing (where it is not)." *Turk*, 626 F.3d at 751.

Such an approach is not only dictated by the plain language of the Guidelines and their accompanying commentary, but also "necessary to ensure that defendants who fraudulently induce financial institutions to assume the risk of lending to an unqualified borrower are responsible for the natural consequences of their fraudulent conduct," no more, no less. *Mallory*, 709 F. Supp. 2d at 459; *see also Turk*, 626 F.3d at 750 ("To accept [the defendant's] argument would be to encourage would-be fraudsters to roll the dice on the chips of others, assuming all of the upside benefit and little of the downside risk.").

## II.

In conclusion, we hold that, in a mortgage fraud case, loss under U.S.S.G. § 2B1.1(b) is calculated in two steps. The first step—calculating actual or intended loss—allows for a reasonable foreseeability analysis, although the actual loss generally consists of the entire principal of the fraudulently obtained loan. The second step—crediting against the actual or intended loss the value of any collateral recovered or recoverable—does not permit a foreseeability analysis. Rather, the value of the collateral is credited against the amount of the loss calculated at the first step, whether or not the value of the collateral was foreseeable. Because the district court followed this rule in calculating the loss attributable to Morris as $1,033,500, we affirm his sentence.

**AFFIRMED.**